UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA CASTRO,                                                CASE NO.

     Plaintiff,

vs.

EDIBLE ARRANGEMENTS, LLC., a Foreign
Limited Liability Company D/B/A EDIBLE
ARRANGEMENTS

     Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER TITLE III OF THE AMERICANS WITH DISABILITIES ACT AND SUPPLEMENTAL JURISDICTIONAL ALLEGATIONS ESTABLISHING ARTICLE III STANDING

Plaintiff, ARANTZA CASTRO, through undersigned counsel, sues Defendant, EDIBLE ARRANGEMENTS, LLC., a foreign limited liability company d/b/a EDIBLE ARRANGEMENTS (hereinafter referred to as "EDIBLE ARRANGEMENTS"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1) This action is also brought pursuant to 28 C.F.R. Part 36.

2) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

1

4)      Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase chocolate dipped strawberries.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby her vision fluctuates from 20/250 to 20/800.

13)     Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing her environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to her visual disability and she requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with her use of a computer.

16)     Plaintiff uses the computer regularly, but due to her visual disability, Plaintiff cannot use her computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist her, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and

responding with her keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)    Plaintiff frequently accesses the internet. Because she is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)    Defendant, EDIBLE ARRANGEMENTS, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

20)    Defendant, EDIBLE ARRANGEMENTS, is a company that sells arrangements, flowers, platters, baked goods, gift sets, chocolate dipped fruits. There is a retail location in Miami-Dade County.

21)    At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "EDIBLE ARRANGEMENTS".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, restaurant, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)    Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)    At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.ediblearrangements.com/. Since the website is open

4

through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

**ARTICLE III STANDING: ALLEGATIONS ESTABLISHING CONCRETE AND PARTICULARIZED INJURY IN FACT AND REAL AND IMMEDIATE THREAT OF FUTURE HARM**

25)     Plaintiff sought to, and did, access Defendant's website in order to obtain information necessary to purchase products and services from Defendant's South Florida location. Specifically,

Plaintiff attempted to review current menu offerings, product pricing, store hours, promotional items, service availability, and ordering options so that he could arrange the purchase of chocolate dipped strawberries or other product or service from that physical location through delivery, pickup, or assisted transportation.

26) Plaintiff is legally blind and relies on screen-reader software to navigate websites. Plaintiff does not independently travel to retail establishments without assistance and therefore depends on accessible online information to determine whether, when, and how to obtain goods and services from Defendant's physical location.

27) On or about January, 2026, Plaintiff attempted on multiple occasions to access and use Defendant's website using his screen-reader software. During those attempts, Plaintiff encountered specific access barriers, including but not limited to unlabeled graphics, inaccessible drop-down menus, improperly formatted navigation elements, empty links, and content that could not be interpreted by the screen-reader software.

28) As a direct result of these barriers, Plaintiff was unable to effectively determine store hours, confirm product availability and pricing, review current promotions, purchase items, or arrange the purchase of services, or otherwise complete or meaningfully prepare for a transaction with Defendant's South Florida location.

29) Plaintiff resides within the geographic market area served by Defendant's South Florida location and regularly purchases similar products and services from comparable establishments within South Florida.

30) Plaintiff has concrete plans within the next thirty (30) days to attempt to complete a transaction at Defendant's South Florida physical location including coordinating delivery, pickup,

or assisted transportation for the purchase products and/or services at the physical location or store. Plaintiff intends to return to the website and physical location within the next thirty (30) days.

31)     Plaintiff cannot meaningfully arrange or complete such a transaction unless Defendant's website is made accessible so that he may independently obtain necessary information and utilize available purchasing features.

32)     Plaintiff intends to return to Defendant's website in the next thirty (30) days to determine whether the accessibility barriers have been remedied and to complete the intended transaction once the website is accessible.

33)     As a result of the foregoing, Plaintiff has suffered a concrete and particularized past injury and faces a real and immediate threat of repeated future injury that is fairly traceable to Defendant's failure to provide an accessible website and redressable by injunctive relief under the Americans with Disabilities Act.

34)     Plaintiff attempted on a number of occasions in January, 2026 to utilize the Website to browse through the merchandise and online offers, to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations in the next thirty (30) days. Plaintiff also attempted to access and utilize the Website in January, 2026 in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

35)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind or visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards

and available screen reader software. Plaintiff attempted to purchase a product or service on Defendant's website in January, 2026.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

## ADA BARRIERS ALLEGATIONS

36) Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

Edible Arrangements: https://www.ediblearrangements.com

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 144.0.7559.60

Screen Reader: NVDA v. 2025.3.2.53588

Video Recorder: Monosnap V. 5.1.18

Summary of Barriers 12

- Missing Skip to Main Content: The website does not provide a "Skip to Main Content" link, forcing keyboard and screen reader users to navigate through repeated header content on every page.

- Cart item count not announced: In the header, the cart button announces only "Shopping Cart link" and does not convey the number of items in the cart.

- Clear all filters not announced: On the Products page, activating "Clear all" refreshes results visually but does not announce that filters were cleared.

- Product quantity changes unclear: On the Cart and Product pages, quantity updates are not clearly announced and are read only as "Selected quantity," causing confusion.

- Add-ons removal not announced: On the Cart page, removing an add-on item is not announced by the screen reader.

- Add-ons addition not announced: On the Cart page, adding an add-on provides visual feedback only, with no screen reader confirmation.

- Tip selection not announced: On the Checkout page, selecting a tip option is not announced by the screen reader.

- Sign-up success not announced: On the Homepage, the discount sign-up success dialog is displayed visually but not announced by the screen reader.

- Track order validation not announced: On the Track Order page, invalid order number errors are shown visually but not announced by the screen reader.

- Bundle item addition not announced: On the Build Bundle page, adding an item to the gift bundle is not announced by the screen reader.

- Bundle delete icon is not keyboard accessible: On the Build Bundle page, the delete icon cannot be reached using keyboard navigation, preventing item removal.

- Mobile promotions validation not announced: On the Mobile App page, invalid or empty email/phone validation messages are not announced by the screen reader.

Violation 1: 1.3.1 Info and Relationships

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

On the header, the cart button visually displays the number of items (e.g., "3"), but the screen reader only announces it as "Shopping Cart link" without announcing the item count. As a result, users with visual impairments are not informed about how many products are in their cart, making it difficult to track selections and progress during shopping.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQCZxluRkn5VTYf_GoxMBBdoAV7SQXE2qVFNUymnLcGSR-k

Violation 2: 2.1.1 Keyboard

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

On the Build Bundle page, the delete icon for an item is not accessible using keyboard navigation. Focus does not move to this icon when using the Tab key (or other keyboard controls), preventing keyboard-only users and users relying on assistive technologies from removing items from the gift. As a result, users relying on keyboard cannot perform this action, creating a significant barrier, particularly for users with motor disabilities.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/build-your-own-bundle

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQCGMky-

gBpJToAadCHY6tLUAXCAf1nUCaxAnaFthl3HKYI

Violation 3: 2.4.1 Bypass Blocks

A mechanism is available to bypass blocks of content that are repeated on multiple Web

pages

The website does not provide a "Skip to Main Content" link. Without this feature,

keyboard and screen reader users must manually navigate through all header and

navigation elements each time they visit a page before reaching the main content. This

causes repetitive navigation, increases interaction time, and creates frustration for users

relying on keyboard navigation.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQADZ7fp7j0cTKAuxANa_aLqAWhotczw0q

AYuCF_ZK41LO4

Violation 4: 3.3.1 Error Identification

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

On the Mobile App page, when the user activates the Sign-up for Promotions 'submit' button with an invalid email or phone number, or leaves these fields blank, validation messages appear visually "Please enter a valid email," "Please enter a valid phone number" but are not announced by the screen reader. As a result, users relying on assistive technologies are unaware that an error has occurred or which fields require valid input, preventing them from correcting the mistakes and signing up for promotions independently.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/mobile-app/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQDakUM4gGe8RLa4G_7PDTYxAQ6uXHk8 jLDIhD1-4Vk_83Q

Violation 5: 3.3.1 Error Identification

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

On the Track order page, when the user activates the 'Track order' button after entering invalid order number, the validation message appear visually "No record of this tracking number can be found at this time, please check the number and try again later. For further assistance, please contact Customer Service" but is not announced by the screen reader.

As a result, users relying on assistive technologies are unaware that error has occurred or which field require valid input. This prevents visually impaired users from correcting mistakes and tracking the order independently.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/customer-service/track-your-order.aspx

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQA1qgJhoUTyS6YaJkHfyfaQASMDzIYfn4p zHNtHpR0lycw

Violation 6: 4.1.2 Name, Role, Value

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

On the Checkout page, when a user selects a tip option, the screen reader does not announce that the option has been selected. Although the selected tip is highlighted visually, users relying on assistive technologies receive no confirmation that their selection was applied. This lack of status feedback creates uncertainty and confusion during the checkout process.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

13

https://www.ediblearrangements.com/payment

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQCI4q1ObhcHR57E8zXDBYRVAY5U8Km

Mi9xqJAPr6cg8pRw

Violation 7: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be

programmatically determined through role or properties such that they can be presented

to the user by assistive technologies without receiving focus.

On the Build Bundle page, when a user adds an item to the gift bundle, the screen reader

does not announce that the item has been added. Although the added item appears

visually in the Build Your Gift section, users relying on assistive technologies receive no

confirmation, creating uncertainty about whether the action was successful.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/build-your-own-bundle

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQApA-

l2ieQITLE9APVL8jXtARQJcjzDUy9Je82fYRecjcg

Violation 8: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Cart as well Product page, the screen reader does not announce the updated product quantity instead it reads 'Selected quantity' after users increase or decrease it. While sighted users can see the quantity change visually, assistive technology users receive no clear feedback about the update. This creates confusion, as users may not know whether their action was successful or how many items are currently selected. Announcing the updated quantity ensures that all users, including those relying on screen readers, can review and adjust their orders accurately.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/fruit-cart?CRID=2096029

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQD37dvyU_XNTbSOpA7ODvg-AdyfS0ZGfY25hl9RvyxQNFA

Violation 9: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Cart page, when an add-on is added to the product, no confirmation is announced by the screen reader. While sighted users receive visual feedback (the add-on appears

with an item on cart page), users relying on assistive technologies are not informed whether the action was successful. This lack of feedback creates uncertainty and may result in repeated or missed actions, making the add-on experience confusing and unreliable for screen reader users.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/fruit-cart?CRID=2096145

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQDUpOV9Na1xS67_6p6c4FyyAV7IeysRLtl nfB4PrzPXkEs

Violation 10: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Cart page, when a user removes an added add-on item, the screen reader does not announce that the add-on item has been removed. Sighted users see the add-on item disappear immediately, but users relying on assistive technology may not know whether their action succeeded. Announcing the removal (e.g., "add-on removed for an item") ensures that all users understand the update and can complete their order.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/fruit-cart?CRID=2096145

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQD89U2TFfYHS7i4eyf8xEDXAdof5T2ooM2QYsCddPhTN9Q

Violation 11: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Homepage, when the Sign-up form for discount is submitted successfully, a dialog opens with the visual success message "Thanks for signing up! Check your email inbox for 15% off your next pickup purchase.". However, the screen reader does not announce this success message. As a result, users relying on assistive technologies receive no confirmation that the form was submitted successfully, causing confusion about the outcome of their action.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQCTnUGtiTUkSoCnHXtQFjtYAZeUt8m6ZsM2U5mkfKn2gtc

Violation 12: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Products page, when the user activates the "Clear all" button, the products refresh visually but the screen reader does not announce that the filters have been cleared. As a result, users relying on assistive technologies are not informed that the filter changes were applied successfully, leading to confusion about the current results.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.ediblearrangements.com/platters-boards?f_id=51.00-75.00&f_id=76.00-100.00&f_id=1802&f_id=4

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQBNIpwn4AgpSKISiplRgpPSARSujAMXt4BTUhLGcM1h0PE

37)     Although the Website appeared to have an "accessibility" statement displayed and an "accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested, still could not be effectively accessed by, and continued to be a barrier to, blind and visually disabled persons, including Plaintiff as a completely blind person. Plaintiff, although she attempted to access the statement, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and the widget/plugin to enable her to quickly, fully, and effectively navigate the Website.

38)     The fact that Plaintiff could not communicate with or within the Website left her feeling excluded, as she is unable to participate in the same shopping experience, with the same access to

the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

39)      Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the Website, but she is presently unable to do so as she is unable to effectively communicate with Defendant, due to her severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to her severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

40)      On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

41)      On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

42)      On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

43)      On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

44)      On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

45)    On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

46)    On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

47)    Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

48)    Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

49)    The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

50)    Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

51)    Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

52)    Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

53) The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

54) Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

55) Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

56) The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

57) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

58) Notice to Defendant is not required because of Defendant's failure to cure the violations.

59) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

60) Plaintiff has retained the undersigned attorneys to represent her in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

61) Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

62) Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

63) Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

64) Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

65) Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

66) In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to

ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

67)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

68)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

69)     The Website was subsequently visited by Plaintiff's expert and his determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable

alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

70)     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

71)     There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

72)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

73)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

24

74)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

75)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

76)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

77)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

78)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

79)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

80)   Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

i.   Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.   Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.   Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.   Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned

26

counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

81)     WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

a.      A declaration that Defendant's website is in violation of the ADA;

b.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1]would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

---



[1]

e.       An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.       An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.       An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.       An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.       An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.       An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and

shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of her reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

82)     Defendant's website contains software analytics.  Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

83)     Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

84)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on her computer.

85)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

86)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

87)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

How Do We Use "Cookies" and Other Tracking Technologies?

We may send one or more cookies to your computer or other device.  We may also use other similar technologies such as tracking pixels, tags, or similar tools when you visit our Services.  These technologies can collect data regarding your operating system, browser type, device type, screen resolution, IP address, and other technical information, as well as navigation events and session information as you interact with our Services.  This information allows us to understand how you use the Services.

What Are Cookies?

Cookies are small files created by websites, including our Services, that reside on your computer's hard drive and that store information about your use of a particular website.  When you access our Services, we use cookies and other tracking technologies to:

.       Estimate our audience size and usage patterns;

.       Store information about your preferences, allowing us to customize our Services according to your individual needs;

.       Contact you to provide you with information or services that you request from us;

.       Advertise new content, events, and services that relate to your interests;

.       Provide you with more personalized content that is most relevant to your interest areas; and

.       Recognize when you return to our Services.

We set some cookies ourselves and others are set by third parties.  You can manage your cookies preference as described in the "Managing Your Cookies" section below.

What Types of Cookies Do We Use and Why?

The following chart lists the different types of cookies that we and our service providers use on the Services, examples of who serves those cookies and links to the privacy notices and opt-out information of those cookie servers.  Because the specific cookies we use may vary over time, as well as differ by the specific page you are browsing, the below chart is illustrative only.

| Types of Cookies | Purpose | Who Serves (for example) |
|---|---|---|
| Essential | These cookies are required for the operation of the Services and enable you to move around the Services and use its features.  Disabling these cookies can negatively impact the performance of Services. | Edible Arrangements Adobe Google |
| Functionality | These cookies are used to recognize you when you return to the Services.  This enables us to personalize content for you and remember your preferences.  These cookies also enable your | Adobe Bazaarvoice Google Microsoft Visual Studio |

31

| Types of Cookies | Purpose | Who Serves (for example) |
|---|---|---|
|  | interactions with the Services such as emailing us and customer support chat. | OneTrust<br>PayPal |
| Analytics, Performance, and Research | These cookies, beacons, and pixels allow us to analyze activities on the Services.  They can be used to improve the functioning of the Services.  For example, these cookies recognize and count the number of visitors and see how they move around the Services.  Analytics cookies also help us measure the performance of our advertising campaigns to help us improve them and to optimize the content on the Services for those who engage with our advertising. | Adobe<br>Crazy Egg<br>Google<br>Hubspot<br>Meta<br>Microsoft Clarity<br>New Relic<br>Pintrest<br>Segment<br>TikTok<br>X (formerly Twitter) |
| Social Networking | These cookies are used to enable you to share pages and content that you find interesting on our Services through third-party social networking and other websites.  These cookies may also be used for advertising purposes. | Google<br>Meta<br>X (formerly Twitter) |

| Types of Cookies | Purpose | Who Serves (for example) |
|---|---|---|
| Advertising | These cookies and pixels are used to deliver relevant ads, track ad campaign performance, or track email marketing. | Adobe<br><br>Criteo<br><br>Dstillery<br><br>Epsilon (Dotomi)<br><br>Google<br><br>Microsoft (Xandr)<br><br>Reddit<br><br>Rubicon<br><br>Samba TV<br><br>TradeDesk<br><br>Weebly<br><br>X (formerly Twitter)<br><br>Xandr |

We do not use analytical tools in a manner that discloses to third parties that a specific person viewed specific video materials.

How Long Do Cookies Stay on My Device?

Some cookies operate from the time you visit the Services until the end of that particular browsing session.  These cookies, which are called "session cookies," expire and are automatically deleted when you close your Internet browser.

Some cookies will stay on your device between browsing sessions and will not expire or automatically delete when you close your Internet browser.  These cookies are called

33

"persistent cookies" and the length of time they will remain on your device will vary from cookie to cookie.  Persistent cookies are used for a number of purposes, such as storing your preferences so that they are available for your next visit and to keep a more accurate account of how often you visit the Services, how your use of the Services may change over time, and the effectiveness of advertising efforts.

88)    Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer.  Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

89)    Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434